[L. A. 2777. Department One.—June 7, 1912.]

HYRUM C. SHURTLEFF, Respondent, v. GEORGE KEHRER, Administrator of the Estate of James Bracken, Deceased, Appellant.

WATER—FLOWING STREAM—PART OF RIPARIAN LAND—DIVERSION MAY BE ENJOINED—ABSENCE OF PECUNIARY DAMAGE.—Water flowing in a stream is real property, and a parcel of the riparian land inseparably annexed to it. Its diversion is an injury to the freehold of the riparian owner and may be enjoined without a showing of other immediate monetary damages.

ID.—PLEADING—QUIETING TITLE TO STREAM.—The allegations of the complaint, in this action, although somewhat general, are held sufficient, as against a general demurrer, to state facts constituting a good cause of action to quiet the plaintiff's title to such water, as part of his real estate, and to enjoin the threatened diversion.

ID.—SUBSEQUENT BONA FIDE PURCHASER—PRIORITY OVER UNRECORDED DEED.—Under section 1214 of the Civil Code, a prior unrecorded conveyance of the riparian rights to the waters of a stream is void as against a subsequent purchaser thereof in good faith and for a valuable consideration, whose conveyance is first duly recorded.

ID.—PURCHASE FROM PARTY IN POSSESSION—INFORMATION AS TO TITLE —POSSESSION AS NOTICE.—A subsequent purchaser of such water-rights, who negotiated for the purchase with a corporation in possession, which was the owner of the property under a prior unrecorded deed, and was informed by it that his grantor held the title and would make a conveyance on its behalf, had the right to rely on such information and was not bound to pursue the inquiry further, and was not charged with notice, by reason of its possession, of the prior conveyance to the corporation.

ID.—POSSESSION AS NOTICE TO SUBSEQUENT PURCHASERS.—Except as provided in section 726 of the Code of Civil Procedure, the open and visible possession and use of such water-rights by such subsequent purchaser would be sufficient to charge all subsequent purchasers with notice of his rights, whether his deed was recorded or not.

ID.—FORECLOSURE DECREE—TITLE OF PERSONS NOT PARTIES TO ACTION ARE UNAFFECTED.—A conveyance under a decree foreclosing a mortgage does not affect the title held by persons who are not made parties to the action of foreclosure, if such title appears of record when the action is begun.

ID.—SUBSEQUENT PURCHASER NOT PARTY TO ACTION NOT BOUND BY FORECLOSURE DECREE.—Such a subsequent purchaser, whose deed

was duly recorded prior to the commencement of an action to foreclose a prior mortgage on the water-rights, but who was not made a party to the action, was not bound by the foreclosure decree.

ID.—EVIDENCE TO SHOW BONA FIDE PURCHASE—FACTS CONSTITUTING ESTOPPEL.—In an action by the purchaser under such foreclosure decree to quiet his title to the water-rights against such subsequent purchaser, the facts showing the latter to have been a *bona fide* purchaser are admissible in evidence without being specially pleaded, although, if pleaded, they might have constituted an estoppel.

APPEALS from a judgment of the Superior Court of Ventura County and from an order refusing a new trial. Robert M. Clarke, Judge.

The facts are stated in the opinion of the court.

Murphey & Poplin, for Appellant.

B. F. Thomas, and Henley C. Booth, for Respondent.

SHAW, J.—Appeals are herein presented from the judgment and from an order denying a new trial. After the appeal from the judgment was taken, James Bracken died and George Kehrer, administrator of his estate, was substituted as defendant. The appeal from the order denying a new trial was taken by the administrator.

The complaint alleges that the plaintiff is the owner in fee of certain lands, describing them; that within the boundaries thereof there is a stream of water called Hund's Cañon; that plaintiff is seized and possessed of the right to divert and use on said land all of the natural and usual flow of said stream, that the defendant claims a right to divert some of the water naturally flowing in said stream; that such claim is without right and that the defendant threatens to divert some of said water and use it upon lands not riparian to the stream, which use, if permitted, would ripen into a right adverse to that of the plaintiff. The prayer is that the plaintiff be adjudged the owner of the right to use all of said water upon said land, and that defendant be declared to have no right thereto and be enjoined from making the threatened diversion. No demurrer was filed to the complaint, but the defendant claims that it does not state facts sufficient to constitute a cause of action. While the allegations are somewhat

general, we think they are sufficient as against a general demurrer. Water flowing in a stream is real property. (*Stanislaus W. Co.* v. *Bachman,* 152 Cal. 726, [15 L. R. A. (N. S.) 359, 93 Pac. 858].) It is parcel of the riparian land, inseparably annexed to it. (*Lux* v. *Haggin,* 69 Cal. 391, [4 Pac. 919, 10 Pac. 674] ; *Heilbron* v. *Last Chance etc. Co.,* 75 Cal. 122, [17 Pac. 65] ; *Hargrave* v. *Cook,* 108 Cal. 77, [30 L. R. A. 390, 41 Pac. 18].) The diversion of water of the stream is an injury to the freehold of the riparian owner and may be enjoined without a showing of other immediate monetary damages. (*Anaheim U. W. Co.* v. *Fuller,* 150 Cal. 333, [11 L. R. A. (N. S.) 1062, 88 Pac. 978], and cases there cited.) The facts stated constitute a good cause of action to quiet the plaintiff's title to the water, as part of his real estate, and to enjoin the threatened diversion.

The answer denies that the plaintiff was or is seized or possessed of the water-rights in question, and alleges that the defendant, Bracken, is the owner thereof. It further alleges that the defendant is the owner of eighty acres of land in Hund's Cañon, situated three-fourths of a mile above the plaintiff's land; that upon said tract the water which the plaintiff claims was diverted by the plaintiff from the stream and from thence carried to the plaintiff's land; that the defendant claimed the right to divert said water and carry it out of the watershed to another tract of land owned by defendant and there use it for domestic and irrigation purposes; that on October 3, 1903, he purchased from the predecessor in interest of the plaintiff all the right, title and interest of said predecessor in and to the water of said cañon, with the dams, reservoirs, tanks, pipes, flumes, and appurtenances thereunto belonging, saving, and excepting such part thereof as was situated within the boundaries of the plaintiff's lands; that said predecessor in interest, Coonrod Smith, thereupon conveyed the same to the defendant, whereupon defendant took possssion thereof, changed the pipe lines as theretofore existing so as to take the said water to his own nonriparian land, and has ever since continued to take and use the said water on said land. The findings are that the plaintiff and his predecessors in interest acquired title to said water by adverse possession and use, that plaintiff is the owner thereof, that prior to the conveyance of Coonrod Smith to the defend-

ant said Smith had conveyed said land and water-rights to the Barr Realty Company, and that Bracken was not a purchaser from Smith in good faith of said water-rights, but had knowledge of the title of the said company. The defendant claims that these findings are contrary to the evidence and we are of the opinion that the claim must be sustained.

The land claimed by plaintiff consists of about 136 acres known as Glencoe Ranch. From about the year 1889 down to February, 1902, it belonged to one Wilsie and his heirs. During this time the use of the water on the land by means of the diversion on Bracken's land above was begun, and controversies arose between Bracken and the Wilsies concerning the right to take the same. The defendant disputed the acquisition of said right by the Wilsies by adverse use and claims that the evidence is insufficient to sustain the finding to that effect. While there is some conflict, there appears to be sufficient evidence to show an adverse use for more than five years during a part of this period, and it must be conceded for the purposes of the decision that the Wilsies had acquired that right. In February, 1902, the Wilsies sold the said land to the Barr Realty Company. For the convenience of the company the title was conveyed to Coonrod Smith by deed dated February 19, 1902. Smith paid no part of the purchase money, but held the land merely as naked trustee for the company subject to its direction and control. The company immediately took possession of the land and continued in possession until after the transactions about to be mentioned. On April 16, 1903, Smith executed to the Barr Realty Company a deed conveying said Glencoe Ranch with the appurtenances and water-rights belonging thereto to the Barr Realty Company. This deed, however, was not recorded until December 10, 1903. Controversies and disputes existed between the Barr Realty Company and Bracken concerning the right to take the water from the cañon, each claiming said right. Thereupon, in settlement of the controversy, it was agreed that the company should sell the water-rights to Bracken and that Bracken should pay one thousand dollars as the price thereof. Harvey Sparling, vice-president of the company, was the officer who transacted all its business and he was duly authorized to act for it in the sale, conveyance, and disposition of all of its property. The negotiations leading

up to this agreement were made by Bracken with Sparling. They met in Ventura to carry out the agreement. Sparling then informed Bracken that the record title to the land and water-rights was in Coonrod Smith and that in order to consummate the agreement it would be necessary for Smith to make the conveyance of the water-rights to Bracken. This was on October 5, 1903. Bracken had no knowledge of the execution of the deed of April 16, 1903, by Smith to the company and never heard of said deed until about the time of the trial of this action. He believed the statement of Sparling that the title was in Smith and that Smith would have to make a conveyance to him and consented to that method of carrying out the agreement. Thereupon he paid the one thousand dollars to Sparling for the company and Sparling delivered to him a deed dated October 3, 1903, duly executed by Coonrod Smith, purporting to convey to him the aforesaid water-rights as described in his answer. This deed was recorded at the request of Bracken on October 5, 1903. Bracken immediately took actual possession of the water-rights, disconnected the pipe line leading to the Glencoe Ranch, and with the pipe previously used by the company and other pipe extended the pipe line to his nonriparian land at an expense of two thousand five hundred dollars, and ever since has continued to divert the water to said land and use it thereon for irrigation and domestic purposes.

We are of the opinion that the effect of this transaction was to vest in Bracken the water-rights conveyed to him by the deed from Smith. Section 1214 of the Civil Code provides that every conveyance of real property is void as against any subsequent purchaser of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded. Bracken comes precisely within this provision. The deed of Smith to the company made on April 16th was not recorded until December 10th. Bracken had no notice thereof and on October 5, 1903, he obtained the deed from Smith which he caused to be duly recorded on that day. He paid a valuable consideration and he took his conveyance without knowledge of the prior unrecorded deed. The plaintiff claims that Bracken had notice of the prior conveyance to the company. His argument on this point is that the company was in actual possession of the

land and water-rights; that Bracken was aware of this possession and that this fact put him on inquiry as to the rights of the company, that if he had pursued the inquiry by making proper inquiries he would have learned of the existence óf the company's deed from Smith. This argument would be sound if Bracken had purchased the water-rights from Smith, paying the purchase money to Smith, while the company was in possession of the property purchased. But this is not that case. Bracken purchased from the company itself. He knew of the company's possession and made his bargain with its accredited representative. He inquired of that company concerning its title and was informed by it that Smith held the title and would make the conveyance on its behalf. This was a complete explanation of the fact that the company was in possession while the title was vested in Smith, and it showed that the two facts were not inconsistent with each other and that the claims of the company and Smith were not antagonistic. He was not bound to pursue the inquiry farther and had the right to accept the statement as correct and take the conveyance from Smith accordingly. He was a purchaser for a valuable consideration and without notice of the deed previously executed to the company. The effect is that the title to the water previously vested in the company as appurtenant to the Glencoe Ranch became vested in Bracken.

At the time this conveyance was made to Bracken the land was encumbered by two mortgages, one to F. R. Foster and the other to John S. Collins. Plaintiff afterward obtained title under sales made on foreclosures of said mortgages. Bracken was not made a party to either of the foreclosure suits. They were begun in 1905, and at that time he was in open and visible possession and use of the water-rights conveyed to him by Smith. Except as provided in section 726 óf the Code of Civil Procedure, this possession would be sufficient to charge all subsequent purchasers with notice of his rights, whether his deed was recorded or not. The deed to the purchaser under the foreclosure decree did not operate to divest the title of Bracken to these water-rights. It is well settled that a conveyance under a foreclosure decree does not affect the title held by persons who are not made parties to the action of foreclosure if such title appears of record when the action is begun. (*Goodenow* v. *Ewer*, 16 Cal. 469, [76

Am. Dec. 540] ; *Boggs* v. *Hargrave,* 16 Cal. 563, [76 Am. Dec. 561] ; *Burns* v. *Hiatt,* 149 Cal. 620, [117 Am. St. Rep. 157, 87 Pac. 196].) The case is not within the provision of section 726 of the Code of Civil Procedure, declaring that a decree of foreclosure is binding against the holder of a subsequent unrecorded deed who has not been made party to the action, even if the plaintiff in the action had knowledge of such deed at the time the action was begun. Bracken was not the holder of title under an unrecorded deed. He held title under deed duly recorded prior to the beginning of the action and the prior deed to the company, subsequently recorded, was void as against him. It follows from these considerations that the finding that plaintiff was the owner of these water-rights and that Bracken had no interest therein is without support in the evidence and is contrary thereto.

It is contended by the plaintiff that the evidence of the transaction between Bracken and Sparling at the time of the sale by the company to Bracken was not admissible because the facts were not alleged in the answer. The theory of the plaintiff is that these facts constituted an estoppel against the Barr Realty Company and its successors, and that an estoppel must be pleaded in order to authorize the admission of evidence in proof of it. While the facts might have constituted an estoppel, they were also admissible for the purpose of proving the acquisition of title under the deed from Smith to Bracken and to show that Bracken was a purchaser in good faith. Hence there is nothing in this objection. There are no other points which require notice. The facts above related are not seriously disputed, and, as the case is presented, it appears that they should have controlled the decision.

The judgment and order are reversed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.