[Civ. No. 7987.   Fourth Dist., Div. One.   Oct. 26, 1966.]

MALCOM E. HARRIS, as Director, etc., Plaintiff and Respondent, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Defendant and Respondent; JAMES A. GUNKEL, Real Party in Interest and Appellant.

Cleveland Smith for Real Party in Interest and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Lynn Henry Johnson, Deputy Attorney General for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

WHELAN, J.—The Alcoholic Beverage Control Appeals Board (Board) reversed a decision of the Department of Alcoholic Beverage Control (Department) which suspended an on-sale general license for 30 days.

Department filed a petition for writ of mandate seeking

judicial review of Board's decision. The writ was granted. James A. Gunkel, the appellant herein (Licensee), was named in the petition as a real party in interest, the suspension of whose license was involved. It is stated in the briefs that he was served with a copy of the petition and of the alternative writ that issued.

On January 22, 1963, an accusation in three counts was filed before Department, charging Licensee with violating title 4, section 143,[1] California Administrative Code, in that on three different occasions Licensee permitted a female employee in and upon the licensed premises to accept a drink of vodka, an alcoholic beverage, purchased by another person and intended for the use and consumption of the female employee.

At a hearing held on the accusation, the hearing officer found the charges to be true and recommended that Licensee's license be suspended for 10 days for each count, the suspensions to run consecutively. The Department adopted the hearing officer's decision. The Licensee appealed the decision to the Board.

The following evidence was presented at the administrative hearing: On the evening of September 7, 1962, at two different and separated times, two special investigators for Department went to Licensee's bar and purchased drinks for a waitress who consumed them.

On October 26, 1962, another special investigator went to Licensee's bar. He asked the same waitress if she cared for a drink. She ordered her drink from the bartender; said "he's paying for it"; and pointed to the investigator. The investigator then told her that any time she wanted a drink to let him know, whereupon she immediately held up her empty glass for the bartender to see. The bartender served her another drink.[2]

---

[1] "143. *Female Employees of On-Sale Licensees Soliciting or Accepting Alcoholic Drinks.* No on-sale retail licensee shall permit any female employee of such licensee to solicit, in or upon the licensed premises, the purchase or sale of any alcoholic beverage, any part of which is for, or intended for, the consumption or use of such female employee, or to permit any female employee of such licensee to accept, in or upon the licensed premises, any alcoholic beverage which has been purchased or sold there, any part of which beverage is for, or intended for, the consumption or use of any female employee."

[2] The testimony of the investigators is as follows: (as to the September 7, 1962 incidents) "So then she picked up a drink that was sitting on the side of the bar and consumed a portion of it, and made some other statements, at which time I—my partner, Carl Hampton, stated 'Boy, I bet you get awful dry shouting your orders in.' And she said 'yes.' And I asked her if I could buy her a drink. And she said 'Sure; I drink

Board held that the agents violated public policy by instigating the offenses and reversed Department's decision solely on that ground.

### LICENSEE'S RIGHT TO APPEAL

■ Department contends that Licensee has no right to appeal the trial court's judgment because he did not respond to the alternative writ of mandate, in which he was not named, nor participate in the proceedings in the superior court.

It was the choice of Department that the alternative writ of mandate was not directed to Licensee as well as to Board.

Code of Civil Procedure, section 938, provides in part: "Any party aggrieved may appeal in the cases prescribed in this title." Licensee is an aggrieved party seeking a remedy under Code of Civil Procedure, section 963, subdivision (1) and entitled to bring this appeal.

In *Estate of Sloan*, 222 Cal.App.2d 283, 292 [35 Cal.Rptr. 167], the court distinguishes all the cases cited in respondent's brief by saying: "These cases hold that in addition to

---

vodka and grapefruit juice.' So I told her to order one then and ordered V.O. and water for myself and my partner. She gave the orders for the three drinks to the bartender Frank. And I saw him mix one of the drinks which was taken from a bottle which was labeled in part vodka and the other part from a can which appeared to be a small type of fruit juice can. . . . he merely set the drink that was mixed from this vodka, placed it on the left side of this waitress service place, . . . and took the money from in front of me and rang it up as a sale. When Melba came back, she picked up a drink, said 'thanks a lot' and consumed a portion of it. At this time she stated to me she had to be awful careful about this type of thing because she had trouble with the law as far as that was concerned, it was against the law and illegal. She said she used to have a practice whereby the patron would merely buy the bartender a drink and the bartender would then give it to the girls designated by the patron so they wouldn't get in trouble with the law. . . .

"We returned approximately 11:30. . . . We took seats at the very south end of the bar, next to the wall. . . . Melba came over. . . . I asked her if her and Jerry would like a drink and she said that they would. And she ordered the drink from the bartender. The bartender served our drinks and Melba drank a portion of hers . . ."

As to the October 26, 1962 incident: "We seated ourselves at the south end of the bar, and at this time I observed two white females standing also at the south end of the bar. I asked one, whom I later identified as Melba, how business was. She replied it was rotten. I asked her would she care for a drink. She called the bartender over immediately, ordered a screwdriver, pointed to me and said 'he's paying for it.' I ordered a bourbon and water. The bartender brought the drinks over and took the money from me. She finished her drink quite rapidly. And I said any time you want a drink let me know, so she immediately held her glass up again where the bartender could see it, and at this time I observed the bartender mix the drink, using a bottle labeled vodka, from the well, and orange juice, which he brought over. Again he took money from me.

being a party 'aggrieved' under section 938 of the Code of Civil Procedure and entitled to appeal, a party must also be a party to the 'record' and move to vacate or otherwise formally oppose the judgment appealed from below. An analysis of the cases . . . indicates that the 'parties of record' requirement was usually applied to exclude parties who were not properly 'aggrieved' and whose interest with the particular litigation was not clearly established. . . . It would be anomalous to hold that a party bound by res judicata . . . is not entitled to appeal. . . .''

The test in this regard is whether the party seeking to appeal has an interest which appears on the record. (*Estate of Levy*, 4 Cal.2d 223 [48 P.2d 675].)

Licensee is named in the body of the petition for writ of mandate as a real party in interest. No doubt he would have been permitted to intervene. His right of appeal should not be cut off because he did not do voluntarily that which Department could have compelled him to do; that is, to show cause why the peremptory writ should not issue.

## DID THE INVESTIGATORS ENTRAP LICENSEE'S EMPLOYEES?

█ The scope of review by Board of findings of Department is limited to a determination whether there is substantial evidence to support the findings. (*Harris* v. *Alcoholic Beverage Control Appeals Board*, 212 Cal.App.2d 106, 112 [28 Cal.Rptr. 74]; Bus. & Prof. Code, § 23084, subd. (d).) .

█ The decision of Board in the case under review states as the reason for its reversal of Department: ''In this case, the department has exercised not only the traditional roles of investigator, prosecutor, judge, and sentencing authority, but the additional role of instigator of the offense itself. To us this transgresses the bounds of sound public policy within the framework of the facts of this case, constitutes the department proceeding other than in the manner required by law, . . .''

Department contends that Board made a finding of fact when it determined that Department had instigated the offense which Board, an appellate body, is not entitled to do.

Department contends additionally that the issue of ''instigation'' or entrapment was not raised before Department and cannot be raised for the first time before Board. (*Harris* v. *Alcoholic Beverage Control Appeals Board*, 197 Cal.App.2d 182, 187 [17 Cal.Rptr. 167].) Had that issue been raised before Department, Department's findings would be construed to resolve the issue against Licensee. If based upon substantial

evidence, the findings in that respect could not be reversed by Board.

The language quoted from Board's decision makes it clear that Board considered the undisputed facts to show entrapment as a matter of law. On that theory Board could have considered the matter even though an affirmative defense on that ground had not been pleaded. ■ The rule that a party may not deprive his opponent of an opportunity to meet an issue in the trial court by changing his theory on appeal does not apply when the facts are not disputed and the party merely raises a new question of law. (*Burdette* v. *Rollefson Constr. Co.,* 52 Cal.2d 720, 725-726 [344 P.2d 307].)

■ Entrapment as a matter of law requires a showing of more than an act committed at the instance of a government official. Persuasion or allurement must be shown and not merely the furnishing of an opportunity to commit an offense that one is ready and willing to commit. (*United Liquors, Inc.* v. *Department of Alcoholic Beverage Control,* 218 Cal.App.2d 450 [32 Cal.Rptr. 603].)

■ Putting aside the question whether the defense of "entrapment," well recognized in the field of criminal law, has been or should be incorporated into administrative law, it is clear that entrapment, as recognized in criminal law enforcement, does not appear as a matter of law in the record of the proceedings under review.

There is no evidence here of "tempting innocent persons into violations," or of an "originally well-intended defendant who is seduced into crime by persuasion and artifice" (*People* v. *Benford,* 53 Cal.2d 1, 8, 9 [345 P.2d 928]); or that the accused was induced by the officer to commit a crime which he would not otherwise have committed (*People* v. *Sweeney,* 55 Cal.2d 27, 49 [9 Cal.Rptr. 793]). The only persuasion apparent is that of appealing to a present inclination to accept an invitation if offered.

■ Hearsay statements of the waitress as to past events, if objected to, would not have been admissible as evidence of the truth of what she said; and evidence of such past acts would, under rules of evidence in criminal trials, be inadmissible on the issue of entrapment (*People* v. *Benford, supra,* 53 Cal.2d 1, 12); nevertheless, her statements are evidence of her disposition and readiness to violate the regulations at the time she made them.

■ Had the same persuasion been offered by one not an

enforcement officer, the result, we may infer, would have been the same.

A similar claim of entrapment was made by a licensee and rejected by the court in *United Liquors* v. *Department of Alcoholic Beverage Control, supra,* 218 Cal.App.2d 450, where an enforcement agent sought and obtained an illegal discount in the purchase of liquor. Department cites also *Harris* v. *Alcoholic Beverage Control Appeals Board,* 197 Cal.App.2d 172 [17 Cal.Rptr. 315]; *Mercurio* v. *Department of Alcoholic Beverage Control,* 144 Cal.App.2d 626 [301 P.2d 474] (in which agents purchased drinks for waitresses); *Endo* v. *State Board of Equalization,* 143 Cal.App.2d 395 [300 P.2d 366]; *Macfarlane* v. *Department of Alcoholic Beverage. Control,* 51 Cal.2d 84 [330 P.2d 769].

In those cases, actions by peace officers might be said to have cooperated with the unlawful conduct of an employee or licensee that resulted in suspension or revocation; in none of them was the claim made that there had been entrapment; nor was the question discussed.

Board contended in the trial court that there is a public policy against conduct such as that of the investigators in the present case; and in its decision it wrote: ''This case presents a serious question of public policy insofar as the enforcement measures utilized are concerned.''

The policy of Department as how best to enforce observance of its licensing regulations is for Department to decide. If such enforcement procedures should violate a recognized public policy, no doubt the departmental policy must yield. But public policy in this field will not be more exacting than it is in condemning entrapment as a basis for criminal prosecutions. The evidence before Department fell short of showing entrapment as a matter of law.

The judgment is affirmed.

Brown, P. J., and Coughlin, J., concurred.